UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-681-H

DEBRA ROWE .   PLAINTIFF

V.

AIG MARKETING, INC.   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Debra Rowe ("Rowe"), has filed suit against Defendant AIG Marketing, Inc. ("AIG"), alleging race, gender, and age discrimination for denial of a promotion, in violation of KRS § 344.040. AIG has moved for summary judgment on all of Rowe's claims. After reviewing the parties' arguments, the Court concludes that Rowe has not produced any evidence to suggest that AIG's proffered legitimate reasons for selecting another candidate for promotion were a mere pretext for discrimination. Accordingly, the Court must sustain AIG's motion.

I.

AIG hired Rowe as a Claim Representative I ("Claim Rep I") in its Louisville office in June 1999. The Louisville office adjusts automobile insurance claims, and each level of Claim Rep handles progressively more complicated matters – a Claim Rep I handles primarily property damage claims, while a Claim Representative II ("Claim Rep II") handles more complicated matters, including claims for bodily injury. Rowe had prior experience in the claims processing from her prior employment with Humana and Paradigm Insurance Company.

Rowe was one of eight Claim Rep I's in the Louisville office in March 2004, when AIG

had an opening for a Claim Rep II. James Mruk ("Mruk"), the branch manager, asked ShaRon Meads ("Meads"), the supervisor of the Claim Rep I's, to recommend candidates for the position. Meads, a 51-year old African-American female, recommended four candidates: Mark Bibelhauser (white male, age 31[1]), Pam Bertram (white female, age 43), Kim Manning (African-American female, age 40), and Barb Simpson (white female, age 54). Rowe, a 42-year old African-American female, was not considered for the promotion.[2] Mruk reviewed the performance appraisal and productivity scores of each candidate and ultimately hired Mark Bibelhauser who had the highest score in both categories. Bibelhauser had no prior experience in claims processing at the time he was hired.

AIG calculates performance appraisal scores on a scale from 1 to 5, with the lowest score being the best. Among the candidates and Rowe, the performance appraisal scores for 2004 were as follows:

| Bibelhauser | 2.6 |
| Bertram | 2.6 |
| Simpson | 2.7 |
| Manning | 2.9 |
| Rowe | 3.1 |

Rowe's performance appraisal score was consistent with her scores in the preceding years, which were as follows:

---

[1] Ages of all parties are as of March 2004.

[2] Rowe was apparently promoted to Claim Rep II in July 2004, when three Claim Rep II positions came open. However, this promotion has no bearing on whether Rowe was initially denied the promotion because of her age, gender, or race.

2

| 2001 | 3.0 |
| --- | --- |
| 2002 | 3.0 |
| 2003 | 2.9 |
| 2004 | 3.1 |

AIG measures productivity by the number of claims closed in a calendar year. In the most recent calendar year, the productivity scores of the candidates were as follows:

| Bibelhauser | 852 |
| --- | --- |
| Manning | 762 |
| Simpson | 758 |
| Bertram | 714 |
| Rowe | 786 |

Following the denial of the promotion to Claim Rep II, Rowe filed a charge of discrimination with the Kentucky Commission on Human Rights, which she subsequently withdrew. This litigation followed.

II.

Rowe brings her claims solely under the Kentucky Civil Rights Act, for which federal case law is controlling. *Gragg v. Somerset Tech. College*, 373 F.3d 763, 768 (6th Cir. 2004) (quoting *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky. 1992)). Under KRS § 344.040, it is unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise discriminate against an individual . . . because of the individual's race . . . sex, or age (40 and over)." Because Rowe has presented no direct evidence of any type of discrimination, the Court analyzes her claim under the framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973) and refined in *Texas Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248 (1981). "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination." *Burdine*, 450 U.S. at 252-53. "Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253 (quoting *McDonnell Douglas*, 411 U.S. at 802). "Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804). The Court will address each step in turn.

A.

To establish a prima facie case, Rowe must show that she 1) was a member of a protected class, 2) suffered an adverse employment decision, 3) was qualified for the position either lost or gained, and 4) lost the position to a person who was not a member of the protected class. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *McDonnell Douglas*, 411 U.S. at 802). Rowe has established a prima facie case as to each claim. She is an African-American woman over the age of 40, she did not receive a promotion for which she was qualified, and Bibelhauser, the person who obtained the position, is a white male under the age of 40.

B.

Following Rowe's establishment of a prima facie case, AIG must demonstrate a legitimate, nondiscriminatory justification for not promoting Rowe. AIG "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient that defendant's

4

evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254-55. AIG claims that Bibelhauser was selected for the position based on both the quality of his work as reflected in his performance appraisals and the quantity of his work as reflected in his productivity score. AIG also asserts that seniority was not a factor in the promotion, and that even if it were, Rowe was only the third most senior Claim Rep I in the office. AIG therefore satisfies its burden of providing a legitimate, nondiscriminatory justification for not promoting Rowe.

C.

At this point, Rowe must produce evidence to demonstrate that AIG's proffered reasons for not promoting her were a mere pretext for intentional discrimination. To demonstrate pretext, Rowe must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083 (citing *Gaworski v. ITT Comm. Finance Corp.*, 17 F.3d 1104, 1109 (8th Cir. 1994)). Rowe may do so by introducing evidence that proves one of three arguments: "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [the action], or (3) that they were *insufficient* to motivate [the action]." *Id.* at 1084 (quoting *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993) (emphases in original)). On its face the appraisal and productivity criteria are both a factual and a reasonable basis upon which AIG might determine promotions. Nevertheless, Rowe makes a number of arguments to demonstrate pretext.

First, Rowe claims that her performance appraisal score was calculated "unfairly." Seventy percent of each performance appraisal score is based on numbers Rowe does not dispute; however, the remaining thirty percent is based on weighted averages of twelve

5

individual "Core values/Characteristics," whose validity Rowe contests. Specifically, each value or characteristic is weighted, and five of the twelve values are assigned a different weight in Rowe's evaluation than those same values in Bibelhauser's evaluation. AIG offers no explanation for the different weightings. AIG does point out that on two of the differing weights, Rowe's weighting was lower than Bibelhauser's, which was more advantageous to Rowe. Thus, Rowe was arguably disadvantaged by only one of the five different weights.

The presence of subjectivity in evaluations and promotions is generally permissible, and AIG has no obligation to select candidates for promotion based on the numerical results of evaluations. The ultimate issue is "whether the subjective criteria were used to disguise discriminatory action." *Grano v. Dept. of Dev. of City of Columbus*, 699 F.2d 836, 837 (6th Cir. 1983). No evidence suggests that the evaluations here were used to disguise discrimination. Recalculation of Rowe's scores using the identical weighting in Bibelhauser's evaluation does not materially change Rowe's overall score. It only moves from 3.072 to 3.051. Bibelhauser's scores were still the best among all the candidates considered for the promotion. AIG's assertion that it selected Bibelhauser for that reason remains valid. Therefore, nothing in the evidence suggests that AIG used the evaluations and different weightings as a mere pretext for age, gender, or racial discrimination.

Second, Rowe argues that the productivity scores are subjective, because Claim Rep I's have no control over the types of claims assigned, which could impact the number of claims closed in a given year. However, Rowe has presented no evidence that her caseload was different from other individuals. Rowe has no evidence that AIG assigned her more difficult cases that hurt her productivity. Thus, Rowe has no evidence to suggest that the use of a facially

valid, though arguably subjective criteria, was a pre-textual device of AIG to mask actual discrimination.

Third, Rowe argues that Bibelhauser may have been promoted because his father held a management position with a sister company of AIG. AIG denies this allegation. Even if Rowe's claim is true, however, such a non-discriminatory factor would not help Rowe's claim. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir. 1996) (affirming summary judgment; "charges of nepotism, even if proven, do not constitute evidence of impermissible discrimination."). Nepotism would not constitute impermissible age, gender, or race discrimination against Rowe.

Finally, Rowe claims statistical proof of discrimination in hiring and promoting at AIG based on race and gender. However, Rowe can only offer unsubstantiated allegations regarding certain promotions and hirings, some of which took place in other AIG offices and which decisions were made by people other than those who decided to promote Bibelhauser. Among these allegations is a claim that AIG has recently hired ten people, all under the age of thirty, all white. This allegation has no evidentiary value without further contextual information, such as the positions for which these individuals were hired, which Rowe does not supply. Rowe has the "burden and obligation of demonstrating that [her] statistics have meaning. It will not be presumed." *Hall v. Martin Marietta Energy Sys.*, 856 F. Supp. 1207, 1214 (W.D. Ky. 1994). Further, an alleged pattern of discrimination cannot prove pretext: "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs . . . because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004).

Rowe makes the valid argument that she was qualified for the position of Claim Rep II. However, the other three candidates for the promotion, all of whom would presumably have been considered for the job before Rowe, and all of whom had higher performance appraisal scores, can make the same claim. Rowe must do more than disagree with AIG's business judgment in selecting among qualified candidates, including Bibelhauser. Rowe must show that AIG's stated legitimate reasons for not promoting her were a pretext to mask discrimination. Rowe has failed to provide sufficient evidence on which a reasonable jury could believe that the real reasons for AIG's decision were age, gender, or racial discrimination. This is fatal to all her claims.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record